of which, notably claims 1 to 8 and 11 to 13, are broad enough to include an engine of any number of cylinders, including four. We quote the first and fourth claims of said patent as illustrative:

"1. A method of distributing a fuel mixture to an engine which consists in moving the mixture in a straight line to a zone from which it is distributed to a plurality of engine cyclinders, and modifying said movement by forces which tend to distribute the mixture uniformly in all directions in a plane transverse to said movement."

"4. A method of distributing a fuel mixture to an engine which consists in moving the mixture in straight line to a zone from which it is distributed to a plurality of engine cylinders, directing said movement by forces which tend to distribute the mixture uniformly in all directions in a plane transverse to said movement, and further directing the movement of the mixture by forces tending to move it successively in a plurality of directions transverse to the original direction, to the cylinders."

It will be observed that these claims are broad enough to include the application of the principle which appellant has invented, to a four-cylinder engine. If appellant is to be allowed claim 9 of this application, it must be upon the theory that there is a patentable distinction between his former patent and this further and more specific claim, and that he further points out in this claim for a new patent some particular application of his general idea to the specific mechanism, namely, a four-cylinder engine.

We are unable to see wherein the appellant has done this in the case at bar. There is nothing in rejected claim 9 which is not substantially covered by claims 1 and 4 of the reference patent. It is not sufficient for appellant to recite that he uses his combination with a four-cylinder engine, and expects to get a specific patent upon this device used with such type of engine, unless he shows further wherein his claim is limited to this type of engine. This has been pointed out, and properly so, by the tribunals of the Patent Office. The appellant has been allowed eight claims in this application, which were framed in such a way as to recite the precise structure which he employed in fitting his manifold to a four-cylinder engine. The rejection of claim 9 by the Patent Office was not based upon the idea that there might not be a patentable distinction between the application of appellant's manifold to a six-cylinder engine and a four-cylinder engine, but upon the general grounds that claim 9 was not different, in substance, from the patent already granted to the appellant. Appellant may not extend his monopoly in this way. This is the doctrine of In re Isherwood, 46 App. D. C. 507; In re Woodsome, 56 App. D. C. 138, 10 F.(2d) 1003; and In re Hutter, 55 App. D. C. 210, 4 F.(2d) 176.

We are in harmony with the conclusion reached by the examiner and by the Board of Appeals, and the decision of the Board of Appeals is affirmed.

Affirmed.

## In re FOX.
### No. 2579.

Court of Customs and Patent Appeals.
Feb. 3, 1931.

Louis E. Giles, of New York City (Fraser, Myers & Manley, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an ex parte application of appellant, in which he seeks a patent on an improvement in packing, adapted for use in ammonia compressors and like machines. Several claims were filed, some of which were allowed. Four claims, numbered 1, 2, 7, and

8, were rejected by the Examiner. Claim 8, afterwards numbered as claim 12, was thereafter allowed by the Board of Appeals, and the Examiner's decision in rejecting claims 1, 2, and 7 was affirmed. These claims are as follows:

"1. An annular packing comprising a series of rings mounted side by side in coaxial relation, said series including hollow, perforated, lubricant containing, soft metal rings of convex polygonal cross section having outer and inner cylindrical walls and outwardly bulging annular uniting walls, and alternating soft metal rings having surfaces complemental to the adjacent surfaces of said hollow rings and filling the intervening annular spaces.

"2. An annular packing comprising a series of rings mounted side by side in coaxial relation, said series including hollow, perforated, soft metal rings of hexagonal cross section having inner and outer cylindrical surfaces connected by opposed conical surfaces, said hollow rings being filled with lubricant, and intervening soft 'metal rings, having complemental conical surfaces, filling the annular spaces between the rings of hexagonal cross section."

"7. An annular packing as specified in claim 1 in which the ring elements are made in separable sections so assembled that the joints between the sections of each ring break joints with those of adjacent rings."

Appellant's device, upon which he seeks a patent, consists of an annular packing for piston rods and the like, and is made up of a series of hollow rings containing lubricating material, preferably a composition of heavy grease and graphite, and which rings have openings or perforations therein for the escape of the lubricant. The preferred cross section of these lubricating rings is hexagonal. They are separated by X-shaped metallic expansion rings, the surfaces of which make close contact with the adjacent walls of the lubricating rings. In that part of each of these X-shaped expansion rings which forms a V, and is adjacent to the moving part, a babbitt metal triangular ring is inserted. Abutment rings are provided to fill the cavities at the ends of the packing. That portion of the X-shaped cavity forming a V, and lying on the outside of the packing, is filled with a soft rubber ring. Thus, when the packing is in place, all parts of the space between the moving part and the walls of the stuffing box are completely filled. Lead is preferably used as the material for the lubricating rings and abutment rings. The

X-shaped rings are preferably of babbitt metal. The hollow rings are inserted in such a way as to break joints with each other, and are, when assembled, forced into contact with the surface of the moving part and the stuffing box by means of a follower of the ordinary type. Whenever it is desired to tighten the packing on account of wear, this follower is moved forward, and thus, by the flattening of the annular rings, all space in the stuffing box is closed and the packing brought into close contact with the moving part.

The Board of Appeals rejected claim 1, on reference to Huhn, 1,079,857, November 25, 1913. Claim 2 was rejected on Pitschel (Ger.) 278,042, September 18, 1914, or Huhn, in view of the patent to Gerhard (Fr.) 477,280, October 8, 1915. Claim 7 was rejected on Judd, 1,038,759, September 17, 1912, as well as on Huhn.

The patent to Huhn is for a metal ring packing, and shows a series of annular hollow rings of triangular shape, made of white metal, filled with lubricant, and having holes therein for the exudation of the lubricant. These rings are circular and have their bases contacting with the moving part. Between these triangular rings are disposed other triangular rings having their bases contacting with the outer walls of the stuffing box, and which are made of cast iron or copper bronze. These two sets of rings are forced into close contact by followers, and, when it is desired to take up any looseness caused by wear in the packing or moving part, the followers are tightened by screw threads. When this is done, the apexes of both sets of these triangular rings lose contact with the surface of the stuffing box or moving part, as the case may be, leaving spaces filled with air, or lubricant, if any be present.

We do not believe the Huhn reference is an anticipation of appellant's first claim for at least three reasons: First, the Huhn hollow rings do not have outwardly bulging, annular uniting walls; second, his packing does not have alternating soft metal rings; third, such rings do not fill the intervening annular spaces. It is admitted by the Solicitor of the Patent Office, as well as by the tribunals below, that there are these three points of difference, but these, it is stated, are not patentable distinctions. We do not find ourselves in agreement with this conclusion. It is quite apparent that the applicant's device would operate in a substantially different way than that of Huhn, and that his invention, as embodied in his first count, is novel and not anticipated by any of the references cited. It will be observed, in connection with

this claim, that the claim does not rest upon a hexagonal cross section. Not only the claim, but the specifications as well, are amply broad enough to cover any kind of annular ring with bulging sides. We are of opinion, therefore, that this claim should be allowed.

Claim 2 is based upon metal rings of hexagonal cross sections and intervening metal rings having complemental conical surfaces. We agree with the Board of Appeals that this is anticipated by the patents to Pitschel or Huhn in view of Gerhard. Gerhard shows a packing having hexagonal lubricant filled rings, and the conical surfaced intervening rings are shown by both Huhn and Pitschel.

Claim 7 rests upon annular rings being so placed that the joints are broken with each other. This is old in the art and is shown by several of the references, particularly by Judd.

We are therefore of opinion that the rejection of claims 2 and 7 was not erroneous. The decision of the Board of Appeals is affirmed as to claims 2 and 7, and reversed as to claim 1, and patent will issue upon said claim 1.

Modified.

## In re COLE et al.

### No. 2556.

Court of Customs and Patent Appeals.
Jan. 21, 1931.

Frank B. Fox and Fraley & Paul, all of Philadelphia, Pa. (Sturtevant & Mason, of Washington, D. C., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Three of the four claims here involved (Nos. 21, 22, and 24), are method claims relating to "Improvements in tire molds and their manufacture." The fourth, No. 26, is for the article.

All were disallowed by the examiner, whose decision was affirmed by the Board of Appeals. Appeal was then taken to this court.

Claims 21, 22, and 24 read as follows:

"21. The method of forming a tire mold side piece of laterally hollowed annular mold contour by hot die-pressing in the axial direction a metal blank of substantially less radial dimension of metal than the piece to be formed, and not substantially of less height, so as to bring the metal to the desired shape by squeezing down and radial displacement.

"22. The method as set forth in claim 21 further characterized in that the blank is externally of smaller diameter than the highest portion of the piece, so that the metal of the blank is displaced radially to form the highest portion of the piece."

"24. The method of forming a tire mold side piece of laterally hollowed annular mold contour which comprises hot die-pressing in the axial direction a ring of much less radial width than the piece to be produced, and of